# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Allianz Global Corporate &
Specialty; Patton Holdings, Inc.;
Ann Arbor Aviation Partners,           Case No. 13-cv-14439
LLC; Flagship Private Air, LLC,        Hon. Judith E. Levy

                Plaintiffs,

v.

Advantage Aviation Technologies,
Inc.,

                Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS [5] AND DENYING AS MOOT PLAINTIFF'S MOTION FOR LIMITED DISCOVERY [9]

This is a case arising from the alleged improper repair of the nose gear of an airplane.  This case is before the Court on defendant's motion to dismiss for lack of personal jurisdiction (Dkt. 5), and plaintiffs' motion for limited discovery for facts supporting general jurisdiction over defendant. (Dkt. 9.)

    I.    Background

Plaintiffs Patton Holdings, Inc. ("Patton"), Ann Arbor Aviation Partners, LLC ("AAAP"), and Flagship Private Air, LLC ("Flagship"), and their subrogee, Allianz Global Corporate & Specialty ("Allianz"), allege claims against defendant, Advantage Aviation Techs, Inc., a Texas corporation, for breach of contract, negligence, breach of express warranty, breach of implied warranty of fitness, breach of implied warranty of merchantability, unjust enrichment, negligence per se, and fraud. These claims arise from an October 31, 2012 incident in which a 2002 Piaggio P180 owned and operated by subrogor plaintiffs veered off of a runway in Boyne City, Michigan, following defendant's repair, overhaul, and inspection of the plane's landing gear systems.

For the purposes of a motion to dismiss a claim for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), plaintiffs bear the burden of making a *prima facie* case for jurisdiction. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980). The Court "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). As such, the following recitation of background facts is derived solely from plaintiffs' briefing

on this motion, and should not be considered a finding by the Court as this litigation advances.

In April 2012, Flagship sought bids for repair and overhaul of the P180's landing gear systems, including the nose gear system. Piaggo representatives referred Flagship to defendant and another repair facility. On April 30, 2012, defendant's sales representative sent a signed quote to Flagship in Michigan promising to do the needed repairs for $195,000, and offering a five-year or 2,500-landing warranty.

Flagship mailed the parts to defendant in July 2012. On July 16, 2012, defendant's representative e-mailed Flagship to inform it that defendant could begin repairs on the P180 after Flagship returned a signed quote and paid a $75,000 deposit. Flagship did so on July 17th, and AAAP paid the deposit on Flagship's behalf. On the 17th and 18th of July, defendant's representative and Flagship corresponded via e-mail concerning missing parts and other information about the repair.

On July 25, 2012, defendant's representative e-mailed Flagship to inform Flagship of different repairs defendant was doing on another customer's aircraft. Defendant's representative also stated that the other customer was saving "quite a bit of money" and wanted to "pass

3

this on to [Flagship] to see if [its repairs on those parts] are due." (Dkt. 10-3, at 8.)

For the rest of July and August 2012, Flagship and defendant's representative exchanged electronic mail regarding various aspects of the repair. On August 16, 2012, the representative e-mailed Flagship to let it know that defendant was awaiting delivery of LEE plugs necessary for the repairs, which were on backorder. Rather than continue waiting, defendant fabricated the plugs itself and slightly delayed the return shipping date for the landing gear.

On September 5 and 6, 2012, defendant's representative and Flagship negotiated shipping and the final invoice cost; the parties agreed that the landing gear systems would be shipped FOB to Flagship in Michigan. On September 11, 2012, AAAP paid defendant the remaining balance due of $145,325.00 on behalf of Flagship. Defendant shipped the landing gear systems back to Flagship on September 14, 2012; Flagship received the systems on September 16, 2012.

When Flagship received the parts on September 16th, it noticed that the main landing gear actuators were improperly aligned. It called defendant that day, and defendant instructed Flagship over the phone

4

how to properly realign the actuators. Flagship also noticed that the right hand main landing gear drag brace lower bushing was not properly ground down. Flagship sent the bushing back to defendant for resizing; defendant resized the part and returned it to Flagship on September 18, 2012. These additional repairs were done pursuant to defendant's five-year warranty.

The runway incident occurred on October 31, 2012, which plaintiffs determined occurred due defendant's faulty repair of the plane's nose gear. Plaintiffs filed suit against defendant on October 23, 2013. The Court held a hearing on this motion on July 7, 2014, and oral argument was heard.[1]

II.  Standard

The burden in a Rule 12(b)(2) motion is on plaintiffs to establish jurisdiction over defendant. *Welsh*, 631 F.2d at 438. If the Court

---

[1] The Court noted on the record that the hearing was taking place solely on the briefs and oral argument, and it was not conducting a pretrial evidentiary hearing. *See Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). No additional discovery was ordered, nor was additional evidence beyond that contained in the briefing considered. Accordingly, plaintiffs need only make a *prima facie* showing that personal jurisdiction exists. *Id*. (holding that if an evidentiary hearing is held, the plaintiff's burden rises to a preponderance of the evidence standard).

5

determines that it will decide the issue based solely on the written materials submitted, the plaintiff need only make a *prima facie* case for jurisdiction. *Id*. The Court must consider the pleadings and affidavits in the light most favorable to plaintiff. *Id*. at 439.

"[P]ersonal jurisdiction over a defendant exists if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002).

III. Analysis

Plaintiffs argue that limited personal jurisdiction exists over defendant based on three provisions of Michigan's long-arm statute, M.C.L. §§ 600.715(1), (2), and (5), which state:

> The existence of any of the following relationships between a corporation . . . and the state shall constitute a sufficient basis of jurisdiction to enable [the Court] to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

[. . . .]

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Defendant argues that none of these provisions suffice to establish jurisdiction over it, as it only conducts business in the state of Texas.

A. Limited Jurisdiction Exists Under M.C.L. § 600.715(1)

When determining whether defendant did business in the state of Michigan, the Court must determine whether defendant has "reach[ed] out beyond one state [to] create continuing relationships and obligations with citizens of another state." *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950). Jurisdiction "may not be avoided merely because the defendant did not physically enter the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).  A party need only "purposefully direct[]" its efforts toward a citizen of another state. *Id*.

Under Michigan law, the phrase "any business" confers a broad and sweeping scope of jurisdiction, encompassing the "slightest" business transaction. *Sifers v. Horen*, 385 Mich. 195, 199 n.2 (1975). Plaintiff, based on its statement of facts outlined above, has undeniably met its burden and shown that defendant conducted business in the state of Michigan. Defendant performed repairs on airplane parts for Michigan customers. Defendant fashioned parts for the customers as a part of the repair. Defendant shipped those parts back to the customers, and provided a five-year warranty on its repairs, knowing that Michigan would be the primary place the repaired parts would be used. Defendant honored that warranty twice, and did so once over the phone while the customer performed further repairs, at Defendant's instruction, in the state of Michigan. Further, at least once during the repair process, defendant attempted to solicit its Michigan customers for further business repairing other airplane parts. Defendant not only conducted business in Michigan, it created a continuing relationship with and obligation

8

to its Michigan customers by providing a five-year warranty on the products it serviced.

Defendant denies that it did business in Michigan, and relies heavily on a Sixth Circuit case, *Kerry Steel, Inc. v. Paragon*, to support its argument. In that case, a Michigan company reached out to and entered into a single-transaction contract with an Oklahoma company to sell it steel coils. *Kerry*, 106 F.3d 147, 148 (6th Cir. 1997). The Michigan company delivered the coils to a warehouse in Illinois, where the Oklahoma company took possession but refused to pay the full purchase price because of alleged nonconformity with agreed quality standards. *Id*. The court determined that there was no jurisdiction in Michigan over an Oklahoma defendant where that defendant never entered the state, had no employees or offices in the state, and no employee of defendant had ever entered the state. *Id*. at 151. The Oklahoma defendant never "reached out" to do business in Michigan, and never "intended to establish continuing relationships and obligations in Michigan." *Id*. (internal quotation marks and further citations omitted).

That case is fundamentally different from this one. *Kerry* concerned a one-shot transaction that physically took place in Illinois; the parties had no intention of ever doing business with each other again. In this case, defendant repeatedly communicated with the Michigan plaintiffs and mailed parts back and forth between Michigan and Texas. Moreover, defendant actively solicited further business from plaintiffs and provided a five-year warranty to plaintiffs – which they used, in Michigan, immediately after receiving the parts back from defendant.

*Kerry* also concerned a transaction where the out-of-state company never sent anything to nor received anything directly from Michigan. Here, defendant received a shipment sent by its Michigan customer, and sent a return shipment back to Michigan which it warranted for five years. Further, defendant fabricated and sent its own additional parts to Michigan, and warranted those parts for five years.

Accordingly, plaintiffs have succeeded in making the required showing that defendant conducted business within the

state of Michigan. As a result, this section of Michigan's long-arm statute reaches defendant.

B. Limited Jurisdiction Exists Under M.C.L. § 600.715(2)

Jurisdiction exists under M.C.L. § 600.715(2) where "either the tortious conduct or the injury . . . occur[s] in Michigan." *Green v. Wilson*, 455 Mich. 342, 352 (1997). Plaintiffs allege defendant committed the tort of negligence, and that the injury from that tort occurred in Boyne City, Michigan when the landing gear defendant was to have repaired malfunctioned. Accordingly, this section of Michigan's long-arm statute reaches defendant.

C. Limited Jurisdiction Exists Under M.C.L. § 600.715(5)

Jurisdiction exists under M.C.L. § 600.715(5) where the defendant has contracted to provide services or furnish materials within the state of Michigan. Interpreting Michigan's long-arm statute, the Sixth Circuit has held that jurisdiction can exist where a defendant performs acts as minor as providing passwords or test results to customers, even where all of the substantive services provided by a defendant were performed in another state.

11

*See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002).

Defendant contracted to provide repaired airplane parts to plaintiffs, and also fabricated additional materials for use in the repairs. It also contracted to provide warranty and support services for a Michigan company, and did so. Defendant's contract with plaintiffs required it both to provide services and furnish materials within the state of Michigan.

Defendant argues that there should be no jurisdiction under this section because it sent the repaired parts to plaintiffs via common carrier, and did not bring the parts to Michigan itself. The Michigan Supreme Court has stated that the relevant inquiry is not *how* the goods got to Michigan, but instead whether the contract required delivery of goods to "a specific Michigan address." *Starbrite Distrib., Inc. v. Excelda Mfg. Co.*, 454 Mich. 302, 304 (1997). Accordingly, this section of Michigan's long-arm statute also reaches defendant.

### D. The Exercise of Jurisdiction Over Defendant Comports With Due Process

The Court now turns to whether the exercise of jurisdiction will deny defendant due process. *Bird*, 289 F.3d at 871. To satisfy due process, the Court must determine whether "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court [in the forum state]." *Mich. Coal. Of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)) (alterations in original). To make this determination, the Sixth Circuit uses a three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id*.

Defendant argues only that the second part of this test is not met, because it did not conduct any activity in the state of

Michigan. Regardless, the Court will address all three parts of the test.

The first part of the test is met, as defendant contracted with a Michigan resident, creating a continuing obligation lasting at least five years. *See Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998). Defendant knew it was contracting with Michigan residents, and knew that the residents would primarily be conducting business in Michigan using the parts it repaired.

The second part of the test is met, as all of the causes of action in the present case arise from defendant's continuing obligations in Michigan. *Id*. Defendant would have the Court read the word "activities" as requiring the defendant to physically perform an act in the forum state. Interpreting this prong of the test in this manner would entirely negate the otherwise permissible exercise of jurisdiction over defendants who purposefully directed their activities at a forum state without entering the state. *See, e.g.*, *Lanier v. Am. Bd. Of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988) (holding that jurisdiction was

14

proper where a non-Michigan resident communicated with a Michigan resident exclusively via phone and mail).

The third part of the test is met, as defendant was aware it was repairing plane parts for companies that operated primarily out of Michigan. Any issue arising from defendant's repairs of the landing gears was overwhelmingly likely to happen in Michigan. Further, the consequence defendant allegedly caused – the plane veering off the runway – occurred in Michigan.

Defendant relies on the Supreme Court's decision in *Walden v. Fiore*, 571 U.S. \_\_\_\_, 134 S. Ct. 1115 (2014) to support its argument that the exercise of jurisdiction over it does not comport with due process. That case is readily distinguishable. In *Walden*, a Georgia police officer, who was serving as a deputized DEA agent, seized nearly $97,000 in cash held by two people traveling from San Juan to Las Vegas through the Atlanta airport. *Id*. at 1119. The officer received communications from the travelers' attorney in Nevada concerning the legitimacy of the funds. *Id*. The officer also helped draft an affidavit to show probable cause for the forfeiture of funds for the DEA. *Id*. Eventually, the DEA returned the funds to the travelers, and the

travelers sued in Nevada, claiming a violation of their Fourth Amendment rights. *Id*. at 1120.

The Court determined that the officer lacked sufficient minimum contacts with Nevada to exercise personal jurisdiction, as his contacts with Nevada were "random, fortuitous, or attenuated." *Id*. at 1123 (citing *Burger King*, 471 U.S. at 475). In *Walden*, the officer was stationed at the Atlanta airport, and seized a bag that could have been headed anywhere. The officer's purpose was to investigate potential criminal activity occurring in the Atlanta airport, regardless of the origin or destination of any evidence or person he investigated. The officer did not purposefully target Nevada or any Nevada citizen, nor did he intend for any action taken at the Atlanta airport to have consequences in Nevada. That consequences occurred in Nevada was, as the Supreme Court stated, random and attenuated to the defendant officer's action in Georgia.

The *Walden* opinion has no bearing on the exercise of jurisdiction over defendant in this case. There was nothing random, fortuitous, or attenuated about defendant negotiating a landing gear repair contract with Michigan residents for a plane regularly operated in Michigan,

16

receiving parts from and returning parts to Michigan, providing a five-year warranty to the Michigan residents covering the work done and parts used, and assisting with further repairs done in Michigan under that warranty. Accordingly, the exercise of personal jurisdiction by the Court comports with due process.

IV. Conclusion

For the reasons set forth above,

Defendant's motion to dismiss for lack of personal jurisdiction is DENIED; and

Plaintiff's motion for limited discovery is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: July 22, 2014         s/Judith E. Levy
   Ann Arbor, Michigan       JUDITH E. LEVY
                             United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 22, 2014.

<u>s/Felicia M. Moses</u>
FELICIA M. MOSES
Case Manager